Kenneth J. WEBER, Plaintiff,

v.

The HIGHWAY COMMISSION of the STATE OF MONTANA, et al., Defendants.

Civ. No. 1930.

United States District Court,
D. Montana,
Helena Division.

Nov. 16, 1971.

James H. Goetz, Bozeman, Mont., for plaintiff.

Donald A. Douglas, Sp. Asst. Atty. Gen., State of Mont., Helena, Mont., for defendants.

## OPINION AND ORDER

RUSSELL E. SMITH, Chief Judge.

Plaintiff claims jurisdiction under 28 U.S.C. § 1343(3). The complaint alleges an invasion of his civil liberties (42 U. S.C. § 1983). The Highway Commission of the State of Montana, Lewis M. Chittim, State Highway Engineer, and Leroy Broughton, Personnel Director, are the defendants. A motion to dismiss the complaint was sustained as to the Highway Commission, and at the conclusion of the plaintiff's evidence the action was dismissed as to Lewis M. Chittim.

Plaintiff was hired by the Montana Highway Commission on April 14, 1969, as a probationary "Draftsman 1" and in April, 1970, was promoted to a "Draftsman 2" with a permanent status. About the 1st of August, 1970, plaintiff wrote an open letter to the Helena Independent Record, a newspaper published in Helena, Montana, which was critical of the Governor of Montana. On August 24, 1970, plaintiff was summoned to the office of defendant Broughton. There was a conversation, the details of which are disputed. By letter of August 25, 1970, plaintiff was dismissed as an employee of the Highway Department as of that day. He was granted two weeks' severance pay.

Some minor dissatisfaction with plaintiff's conduct as an employee existed among his supervisors in the Highway Department, but I conclude from his promotion, from his efficiency report, and from the fact that none of the persons supervising his work took or suggested any disciplinary action against him that his work was on the whole satisfactory, and that in the ordinary course of events he would not have been discharged for inadequate performance. It is freely conceded that plaintiff knowingly filed a false application for employment. In the application plaintiff showed no arrests whereas he had as a juvenile been arrested for several misdemeanors. He grossly misrepresented his qualifications for the job. At the time of the discharge defendant Broughton knew in a general way that the arrest record had been falsified but was not aware of the more blatant falsifications with respect to job qualifications.

From all of the evidence, I find that the letter written by plaintiff about the Governor triggered an investigation, the purpose of which was to find some cause for discharging him; that such cause was found and was used to justify the act of firing. There is no way to know whether, given the discovery of the falsifications and absent the letter, plaintiff would have been fired.

I think the State of Montana is free[1] to determine the terms of its contract of employment and that a state may adopt a personnel policy under

1. The State of Montana has taken this view. R.C.M.1947 § 59-405, State ex rel. Bonner v. Dist. Court, 122 Mont. 464, 206 P.2d 166 (1949), State ex rel. Rusch v. Bd. of County Comm'rs, 121 Mont. 162, 191 P.2d 670 (1948).

which employees are fired without cause, without hearing, and without notice. The U. S. Constitution[2] does not require the states to abandon a spoils system in favor of civil service although while a state employee may be discharged for no reason, he may not be discharged for an improper reason such as the exercise of a constitutional right.[3] Where, however, the employment is under circumstances which give the employee an expectancy of continued employment then the employee has a right or entitlement which cannot be divested without hearing. This is so not only as a matter of state law[4] but as a matter of due process under the 14th amendment to the U. S. Constitution. I reach the latter conclusion because it seems to me that if a state-created entitlement in the nature of welfare cannot be terminated without prior notice and hearing even though initially the state is not required to provide welfare,[5] then a job entitlement may not be terminated without prior notice and hearing. I repeat that a state is not required to create entitlement to a continuity of state employment—that a state employee does not by virtue of his initial employment alone have an entitlement to his job—but only that where the state does create the entitlement then due process requires a notice and hearing as a condition of termination.

█ The question then arises: Did Weber under the facts here have an entitlement to his job? The statutes of Montana give him none but I conclude that the regulations[6] of the Highway Commission do.[7]

█ A specific exception permits the dismissal of a probationary employee without notice. Under another specific exception an employee may be dismissed for administrative reasons without notice. I interpret the words of the regulations, "An Assistant State Highway Engineer may dismiss an employee under his supervision for good and sufficient reasons," to mean that unless administrative reasons require it, a permanent employee may not be dismissed without cause. Under Montana law an employee who cannot be dismissed except for cause is entitled to notice and pre-job-termination hearing, and in the absence of such hearing the discharge is illegal without regard to the existence or nonexistence of a cause for removal.[8]

Plaintiff was given the two weeks severance pay called for in the case of an administrative discharge but the letter of discharge specifies no administrative reason. There was evidence that at about the time of the discharge the Highway Department was advertising for draftsmen and the defendant does not attempt to justify the discharge as administrative. I find that it was not. It follows that plaintiff had a job entitlement under Montana law. The order to report to Broughton's office and the interview with him were not notice and

2. Kirker v. Moore, 308 F.Supp. 615 (S.D. W.Va.1970), Norton v. Blaylock, 285 F. Supp. 659 (W.D.Ark.1968) aff'd 409 F. 2d 772 (8th Cir., 1969).

3. Pickering v. Bd. of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), Keyishian v. Bd. of Regents, 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967).

4. State ex rel. Ford v. State Fish & Game Comm'n, 148 Mont. 151, 418 P. 2d 300 (1966), State ex rel. Opheim v. State Fish & Game Comm'n, 133 Mont. 362, 323 P.2d 1116 (1958), State ex rel. Nagle v. Sullivan, 98 Mont. 425, 40 P.2d 995 (1935).

5. Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). See also Battle v. Mulholland, 439 F.2d 321 (5th Cir. 1971), Ferguson v. Thomas, 430 F. 2d 852 (5th Cir. 1970).

6. Under Montana law a regulation quite as well as a statute may create job entitlements. State ex rel. Keeney v. Ayers, 108 Mont. 547, 92 P.2d 306 (1939).

7. See Appendix A.

8. State ex rel. Ford v. State Fish & Game Comm'n, supra, note 4.

hearing under any concept of due process.[9]

 I conclude therefore that by virtue of Montana law plaintiff had a job entitlement and that his discharge without notice or hearing violated his rights to due process under federal law.

I turn to the remedy.

 As against the defendant Broughton I award plaintiff nominal damages in the sum of One Hundred Dollars ($100.00). While it may be that a plaintiff may not be required to exhaust his administrative remedies as a condition to a civil rights action,[10] nevertheless that failure is a factor to be considered in awarding damages. Plaintiff had a right of appeal and on that appeal he properly[11] may have been fired for cause because of the falsifications in his application. His exercise of his rights to freedom of speech while not a legitimate ground for discharge did not furnish him with a form of job insurance. On the other hand, on appeal the personnel board may have decided that plaintiff should not under all of the circumstances have been fired. In that case he would have his job. In either case I am unable to find that Broughton's act was the proximate cause of plaintiff's wage losses, nor can I conclude that an administrative appeal of this sort could not have been accomplished within the two-week period during which he was paid.

On the equitable side plaintiff is entitled to be reinstated to his job. Nothing here affects such future disciplinary action as the Highway Department may see fit to take.

 The fact that the motive for the firing was generated by plaintiff's exercise of his first amendment rights does not in my opinion prevent the Highway Department from dismissing him if a valid cause for dismissal is shown. A person may make himself conspicuous, and obnoxiously so, to those in power by writing letters to the editor. He may do the same thing by getting drunk at a public reception or insulting his superior's wife. A person who is conspicuous, whether by reason of an activity which is constitutionally protected or one which is not, calls attention to himself. I think the first amendment does not go far enough to protect a person who turns a spotlight on himself from the consequences of what is disclosed in the glare of that light. At a hearing plaintiff must be judged by his own conduct and the purity of the motive of his accusers is not relevant except as it might relate to the objectivity of the hearing itself.

Broughton, in discharging plaintiff, acted for Louis M. Chittim, the State Highway Engineer. Whether Broughton, now the only party to this action, has the capacity to reinstate plaintiff is not clear from the record. If there is any question about Broughton's authority he shall so advise the Court. Orders will then be made reopening the case for the purpose of giving plaintiff an opportunity to add additional parties.[12]

Plaintiff will prepare a judgment in accordance with Rule 14(b) of the Rules of this Court. If defendant Broughton desires to suggest a lack of power to reinstate plaintiff he shall indicate such in his objections to plaintiff's proposed judgment.

9. Because there was no semblance of due process in the discharge I am spared the formidable task of making sense out of the Commission's rules which seem to require hearings for permanent employees who are on disciplinary probation but not for permanent employees who have never had any disciplinary problems.

10. Whitner v. Davis, 410 F.2d 24 (9th Cir. 1969); *but see* Eisen v. Eastman, 421 F.2d 560 (2d Cir. 1969).

11. *See* Appendix A.

12. At the close of plaintiff's case a motion to dismiss as to Chittim was granted because the name "Chittim" had not at that time been mentioned except as it appeared on the dismissal letter. At that time there was no evidence that Chittim had authorized the use of his name. Proof of authority was, however, made in defendant's case. There was no motion to set aside the order as to Chittim.

## APPENDIX A
### 3.00—EQUAL EMPLOYMENT OPPORTUNITY POLICY

It is the policy of the Montana State Highway Commission to assure affirmative action in providing equal employment opportunity without regard to race, religion, sex, color, or national origin. Such action shall include: employment, upgrading, demotion or transfer; recruitment or recruitment advertising; layoff or termination; rates of pay or other forms of compensation; and selection for training. * * *

\* \* \* \* \* \*

### 5.00—EMPLOYMENT

#### 50.1—General

* * * An applicant for employment must complete a Montana Highway Commission Standard Application Form No. 144. * * * Any willful false statement made on the application will be cause for rejection or dismissal if discovered subsequent to employment. * *

\* \* \* \* \* \*

#### 5.18—Grievances

* * * An employee who has been suspended from his position, reduced in rank or compensation, or discharged from his position, and who shall consider himself aggrieved, may file an appeal directly with the Personnel Board and request a hearing thereon. * * *

\* \* \* \* \* \*

*Step 5.* In the cases of grievance involving dismissal, demotion in rank or suspension, the employee may file an appeal in writing directly to the Personnel Board. Such appeal, stating the pertinent facts to the grievance, shall be filed with the Personnel Director within fifteen (15) calendar days following such disciplinary action. A copy of the Personnel Board's findings and decision shall be furnished the State Highway Engineer for his information.

The decision of the Personnel Board shall be final.

### 9.00—DISMISSAL

An Assistant State Highway Engineer may dismiss any employee under his supervision for good and sufficient reasons.

Any employee may be dismissed without notice by the Highway Commission or the State Highway Engineer for administrative reasons and, upon release, may be administratively granted two (2) weeks (ten (10) working days) severance pay.

Grounds for dismissal may be based on work performance and/or conduct. They may not be based on racial, religious, or political prejudices. Examples of acceptable grounds are:

1. Misrepresentation of background in education or employment.

2. Habitual defaulting on credit obligations.

3. Inability to do assigned work.

4. Acute or chronic metal (*sic*) or physical deterioration.

5. Refusal to follow orders or instructions.

6. Refusal to accept assignment promptly to a place of headquarters that most conveniently serves the interests of the Commission.

7. Willful violation of Commission regulations or policies.

8. Misuse of Commission equipment.

9. Being on the job under the influence of alcohol.

10. Drug addiction in any form on or off the job.

11. Conviction of any infraction of the Law that may be considered, to be a reflection against or a by the nature of the conviction, discredit to the Commission.

12. Engaging in political activities which are prohibited by Commission regulations.

Any employee who has not completed the initial probationary period may be dismissed without prior notice. However, as a matter of courtesy a written prior notice of fifteen (15) calendar days should be given.

A fifteen day written prior notice shall be given in any case of dismissal of a permanent employee who is on probation due to disciplinary action or because of recent promotion. The notice shall clearly specify:

1. Effective date of the dismissal and,

2. The reason or reasons for dismissal.

Previously attempted corrective actions or warnings, if any, or comments pertinent to the situation, should be included in the notice.

Relevant facts or statements from the employee or other sources whether received then or later shall be reviewed by the Personnel Director, with the Assistant State Highway Engineer and other interested management and placed in the employee's file for reference in the event of an appeal. It is recommended that dismissal for cause be thoroughly evaluated before final action is taken. Problems should be objectively discussed in private with the employee. Outright dismissal should not be used as a threat during the discussion, though it may be properly mentioned as a possible consequence. A written record should be made of the discussion even though it covers only bare essentials, the undesirable items and corrective remedies considered. The originals should be filed by the Assistant State Highway Engineer and a copy forwarded to the Personnel Director to be included in the employee's file. Before any action regarding dismissal is taken, the Personnel Director should be consulted for his recommendations.